**NORTHERN INDIANA GUN &
OUTDOOR SHOWS, INC.,**
Plaintiff–Appellant,

v.

**CITY OF SOUTH BEND, Stephen Leucke,
Brian R. Hedman, and Karl King,** Defendants–Appellees.

No. 98–1636.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1998.

Decided Dec. 31, 1998.

450

Jay T. Hirschauer (argued), Logansport, IN, for Plaintiff–Appellant.

Thomas L. Bodnar (argued), South Bend, IN, for Defendants–Appellees.

Before BAUER, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Northern Indiana Gun & Outdoor Shows, Inc. ("NIGOS") appeals the District Court's decision granting a Rule 12(c) motion for judgment on the pleadings. NIGOS brought suit under 42 U.S.C. § 1983 alleging that the City of South Bend, Indiana; Stephen Leucke, mayor of South Bend; Brian Hedman, executive director of Century Center; and Karl King, chairman of the Civic Center Board of Managers (collectively "the defendants" or "Century Center"), violated NIGOS's First Amendment rights of free speech and assembly and Fourteenth Amendment rights of equal protection and due process. The District Court concluded that NIGOS failed to establish its constitutional claims and, thus, granted Century Center's Rule 12(c) motion for judgment on the pleadings. In reaching its decision, the District Court resolved a conflict between the allegations NIGOS made in its complaint and unilateral statements made by Century Center in letters that NIGOS attached as exhibits to the complaint. Because we determine that it was error to credit the unilateral statements in Century Center's letters over the allegations in NIGOS's complaint, we reverse and remand the case for further proceedings.

## I. History

The City of South Bend established the Century Center facility ("the facility") in accordance with Indiana Code sec. 36–10–10–1

*et seq.* Under this statute, the State of Indiana permits certain municipalities to establish and operate civic centers through a board of managers, whom the mayor and city council appoint. Brian R. Hedman is the current executive director of Century Center; Karl King is the chairman of the board of managers; and Stephen J. Leucke is the mayor of South Bend. Century Center hosts several events, such as conventions, trade shows, banquets, receptions, and entertainment events. It is the largest civic center in the area of northern Indiana and southern Michigan known as Michiana.

Between 1991 and 1994, NIGOS held annual gun shows at the facility. These shows drew a large number of participants. The shows attracted individuals interested in buying, selling, trading, collecting, and talking about firearms. In addition to firearms, vendors offered a variety of goods for sale, including optical devices, knives, collectible military memorabilia, hunting equipment, camping gear, and holsters. At the 1994 show, five of the 140 exhibitors disseminated literature regarding political, sociological, and historical topics. The National Rifle Association conducted political activities at the show.

Initially, the Board of Managers of the Century Center ("the Board") enforced a policy that prohibited anyone from possessing a firearm while in the facility. However, the Board created an exception for law enforcement officers and for individuals with weapons that were "part of a related firearms show or exhibit." Firearms in the latter category could not be "loaded or in a status of releasing a projectile." In addition, the Board adopted a policy requiring all firearms associated with a gun show to be tied-down to disable the weapons, making it impossible to fire them. NIGOS also required firearms at its shows to be similarly disabled. It required show participants to remove all clips of ammunition from all guns and disable their firearms with tie-downs.

After the 1994 NIGOS gun show, Hedman sent a letter to Richard Crosier, president of NIGOS, expressing concern regarding the Board's and NIGOS's safety policies. In the letter, Hedman wrote that during the event, he and his staff witnessed activities at the show that violated these policies and raised safety concerns. One staff member observed weapons with nylon bans (*i.e.* tie-downs) that had been cut, which made it possible to load the firearm. Hedman believed the participants were disregarding the safety policies of Century Center, concluding that "[i]f these sellers and or customers are going to so obviously disregard these safety precautions, it becomes clear that the only way to have a safe gun show is to have one without guns." In addition, Hedman expressed concern about NIGOS's decision to allow smoking in the hallways close to ammunition and powder. Finally, he stated that his legal counsel warned him Century Center could be liable to individuals injured by weapons sold at the show. He ended the letter by concluding that:

> before we would allow you to hold any other gun shows at the Century Center, it would only be with the understanding that neither ammunition nor weapons may be present on the premises at any time. I assume you would not want to continue your show at Century Center under these restrictions, but if you do, please call Sandy Lee and we will be happy to accommodate you.

Subsequently, Hedman and Crosier exchanged several phone calls during which NIGOS encouraged Century Center to reconsider the no firearms and ammunition policy. This new policy deterred NIGOS from conducting shows at the facility, which, according to NIGOS, is the only facility in the area that is large enough to handle the number of participants in their shows.

Finally in an August 1996 letter, Hedman informed NIGOS that in April 1994, "the Board of Managers of Century Center adopted a policy which prohibits any sort of weapons, guns, or ammunition from being present in the hall as part of any show. This policy was adopted at a duly advertised public meeting after considerable debate by parties representing many viewpoints." Hedman reiterated his desire to continue doing business with NIGOS if the organization wanted to use the facility again.

In response, NIGOS brought a claim under 42 U.S.C. § 1983 against the City, the Mayor, the Chairman of the Board of Century Center,[1] and the Executive Director.[2] NIGOS argued that the defendants violated its First Amendment rights of free speech and assembly, as well as its Fourteenth Amendment rights of equal protection and due process. The defendants moved for a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. NIGOS moved for summary judgment. The District Court granted the defendants' motion, and NIGOS appealed.

## II. Rule 12(c) Motion for Judgment on the Pleadings

 We review the District Court's ruling on a Rule 12(c) motion for judgment on the pleadings *de novo*. *See Warzon v. Drew*, 60 F.3d 1234, 1238 (7th Cir.1995). Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *See* Fed.R.Civ.P. 12(c). We review Rule 12(c) motions under the same standard as a motion to dismiss under Rule 12(b).[3] *See Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir.1996). Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989)). Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved. "[W]e will view the facts in the complaint in the light most favorable to the nonmoving party," *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995); "[h]owever, we are not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir.1989).

## III. Analysis

Rule 12(c) motions present two considerations. We must determine what documents constitute the pleadings and how to resolve conflicts that may arise within these documents. Because this case involves freedom of expression, we are even more hesitant than usual to decide the claims presented without providing the parties an opportunity to develop the record. *See Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004, 1005 (7th Cir.1990). Accordingly, we examine the pleadings in this case mindful of this concern.

### A. The Pleadings

 First, we must determine what documents we may consider under Rule 12(c). As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. *See Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993), *cert. denied sub nom., Leahy v. City of Chicago*, —— U.S. ——, 117 S.Ct. 1818, 137 L.Ed.2d 1027 (1997). The pleadings include the complaint, the answer, and any written instruments attached as exhibits. Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes."); *see, e.g., Warzon*, 60 F.3d at 1237 (stating that exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(c) motions); *cf. Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988) (stating that exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(b) motions). Under Rule 10(c), the attached documents

---

1. On December 23, 1997, the District Court dismissed Karl King as an individual defendant; however, he remains a defendant in his official capacity.

2. NIGOS is suing Brian Hedman in both his individual and official capacities.

3. We view Rule 12(c) motions much like Rule 12(b) motions to dismiss for failure to state a claim. Both motions permit a party to request the district court to dispose of the matter at the initial stage of the proceedings. The primary difference between these motions is that a party may file a 12(b) motion before its answer. "A motion making any of these defenses [12(b)(1)–(7)] shall be made before pleading if a further pleading is permitted." Fed.R.Civ.P. 12(b). A party may move to dismiss the claim under Rule 12(c) "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c).

are incorporated into the pleadings. Historically, this Court has interpreted the term "written instrument"[4] as used in Rule 10(c) to include documents such as affidavits, *Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir.1969), *overruled on other grounds by City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), and letters, *In re Wade*, 969 F.2d 241, 249 (7th Cir.1992), as well as contracts, *Craigs*, 12 F.3d at 688–89, and loan documentation, *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir.1991). Thus consistent with our prior decisions, the District Court properly included the attached letters written by Hedman in its consideration of Century Center's Rule 12(c) motion.[5] We, therefore, turn to these documents.

In its amended complaint, NIGOS alleged that "the institution of a no gun show policy and denying NIGOS the use of Century Center violate[d] the Constitution and the laws of the United States ..." This policy and deprivation, NIGOS averred, prohibited it from exercising its First Amendment right to engage in activities conveying truthful and legitimate speech, as well as political speech. NIGOS characterized the policy as a no gun show policy and an impermissible content-based restriction, existing only because the defendants did not agree with the message of the speech the gun show conveyed. It believed Century Center wanted to impose an absolute ban on gun shows and the speech associated with them. NIGOS also alleged Century Center engaged in behavior that improperly restricted its right to assemble freely. In addition, NIGOS alleged Century Center discriminated unfairly by treating it differently than other exhibitors and, thus, violated the Equal Protection Clause. Finally, NIGOS charged that Century Center, when enacting the policy, deprived the organization of its due process rights.

To support its allegations, NIGOS attached four exhibits to its complaint. First, it included the reservation application it sent to potential exhibitors. This document contained the "show rules" NIGOS required exhibitors to follow, including the rule prohibiting clips in guns and the requirement for guns to have tie-downs. The document provided that violations of these rules could "result in immediate and permanent expulsion from the show and all future shows." The second document is a copy of the letter Hedman sent to Richard Crosier on January 31, 1994. It discussed the safety and liability concerns Hedman had after the 1994 event.

4. At least one circuit, however, has reached a different conclusion by interpreting the term "written instrument" narrowly. In a footnote, the Third Circuit specifically held that affidavits are not "written instruments" under Rule 10(c) because:

> [t]o hold otherwise would elevate form over substance by drawing a distinction between an affidavit filed with an answer and an affidavit filed with a motion to dismiss under Rule 12(b)(6). In addition, this would blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted.

*Rose v. Bartle*, 871 F.2d 331, 339–40 n. 3 (3d Cir.1989). We believe the broader interpretation comports with the traditionally generous nature in which we view pleadings.

5. Although NIGOS encourages us through its brief and during oral arguments to consider facts outside the pleadings, we will not do so. On a motion for judgment on the pleadings, if the court does not exclude matters outside the pleadings from its consideration, it should convert the Rule 12(c) motion into a Rule 56 motion for summary judgment. Fed.R.Civ.P. 12(c); *see*

*Church v. General Motors Corp.*, 74 F.3d 795, 798 (7th Cir.1996); *see generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (2d ed. 1990 & Supp. 1998). In this case, neither party requested, nor did the court decide to convert the Rule 12(c) motion into a Rule 56 motion for summary judgment. The record contains many more documents, including additional motions, memoranda in support of motions, and excerpts from deposition testimony supporting these motions. This information, which is not part of the pleadings, is clearly outside the scope of Rule 12(c). The District Court did not consider these documents in its ruling.

In addition, if the defendants had relied upon any matters outside of the pleadings in their 12(c) motion and supporting memorandum, the District Court would have been required to convert the 12(c) motion to a Rule 56 motion for summary judgment. *See Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.*, 16 F.3d 832, 835–36 (7th Cir.1994). They did not; thus, the District Court properly ruled on the Rule 12(c) motion. We, therefore, may consider only NIGOS's complaint with its four attachments and Century Center's answer and attachment.

The third attachment NIGOS provided is the September 6, 1996, letter Hedman sent to Joy Crosier notifying her that the Board adopted a no firearm and ammunition policy in 1994. The letter stated that "[t]he policy was adopted at a duly advertised public meeting after considerable debate by parties representing many viewpoints." Finally, NIGOS attached an undated document that appears to be the "General Rules and Regulations" of Century Center. Rule M states that "[f]irearms are STRICTLY PROHIBITED. The only exception is for law enforcement officials or as part of a related firearms show or exhibit. Firearms used in conjunction with an exhibit or show must not be loaded or in a status of releasing a projectile." Neither the complaint nor the exhibit provided a date referencing when Century Center enforced this rule.

The defendants answered the amended complaint and provided an additional exhibit. In addition to their admissions and denials of specific allegations and several affirmative defenses, the defendants attached a letter sent from A. Howard Williams, an attorney for NIGOS, to Hedman. Williams wrote that NIGOS believed "the decision [to adopt the policy] was politically motivated." Williams also denied that there were any safety problems at the 1994 show, outside of smoking in the hallways. He also noted that there had never been any injuries associated with such shows in its history. He believed Century Center's attorney's concern about the facility's liability constituted an incorrect legal opinion and argued that no precedent existed for such liability. Finally, Williams wrote that NIGOS would have been willing to move the show as soon as possible, but that until another site could be obtained, the group wanted to continue using Century Center and would have been willing to sign a document releasing Century Center from any "personal liability."

As the District Court noted, a conflict exists between the allegations in NIGOS's complaint and statements made by Hedman in letters attached to the complaint. First, Hedman wrote that Century Center adopted the no firearm and ammunition policy for safety reasons. It feared the danger associated with loaded firearms inside the facility and the danger that could erupt when NIGOS permitted participants in the show to smoke near live ammunition. Second, Hedman wrote that the Board adopted the policy after a public meeting in which those opposed to it had opportunity for comment. These unilateral statements, if true, contradict NIGOS's allegations that Century Center adopted the policy to suppress NIGOS's political and commercial speech. In addition, the statements contradict NIGOS's allegations that Century Center, in adopting the policy, treated NIGOS differently than other organizations and individuals who used the facility and failed to provide NIGOS with notice of and opportunity to comment on the new policy before the Board approved it. In reaching its decision, the District Court resolved this tension by favoring the information in the letters authored by Century Center.[6]

## B. Resolving Conflicts between the Complaint and Exhibits

In examining the pleadings, we must determine how to resolve this tension between the allegations in the complaint and the exhibits attached to the complaint. It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. See *Graue Mill*, 927 F.2d at 991; cf. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994) (concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss for failure to state a claim); *Bell v. Lane*, 657 F.Supp. 815, 817 (N.D.Ill.1987) (stating that "[w]here exhibits attached to a complaint negate its allegations, a court is not required to credit the unsupported alle-

---

**6.** The District Court also relied upon Century Center's statements in the letters that it would be willing to work with NIGOS in the future so long as no firearms and ammunition were part of any event. The District Court believed these unilater-

al statements indicated Century Center did not deny NIGOS the use of its facilities, but rather enacted a limitation on the organization's use of it.

gations" in denying a petition to file in forma pauperis based on information in the exhibits that contradicted allegations made in the petition). In fact, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Wade*, 969 F.2d at 249.

■ Although the District Court stated this general rule correctly, we believe it applied the rule too broadly. The District Court interpreted our cases in this area to imply that statements in exhibits attached to a complaint should always control over allegations made within the complaint. To conclude summarily, however, that letters written by Century Center represent the truth with regard to the defendants' intent simply because NIGOS attached them to its complaint for reasons unrelated to their truthfulness is inappropriate. Rather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents.

First, we cannot read the letters written by Century Center as more than assertions contained in a communication with NIGOS. As the Second Circuit has noted:

> An appended document will be read to evidence what it incontestably shows once one assumes that it is what the complaint says it is (or, in the absence of a descriptive allegation, that it is what it appears to be). For example, a written contract appended to the complaint will defeat invocation of the Statute of Frauds, and a document that discloses what the complaint alleges it concealed will defeat the allegation of concealment.

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir.1995). The letters that NIGOS attached to its complaint demonstrate that Century Center stated it adopted the policy for safety reasons during a public meeting that had been publicized and during which individuals opposed to the policy had the opportunity to voice their concerns. It does not, however, establish the truth of these unilateral statements.

■ Second, the letters, upon which the District Court based its conclusion, are not themselves the basis of NIGOS's claims, and, thus, we must take care not to overemphasize their importance. When the document itself forms the basis for the allegation, the document must be examined as a whole. *See Foshee v. Daoust Const. Co.*, 185 F.2d 23, 25 (7th Cir.1950) ("The meaning to be ascribed to [a] phrase must be determined from the contract as a whole" rather than in isolation.). When the exhibit, however, is not the subject of the claim, Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact. A blanket adoption rule makes sense in the context of an attached contract or loan agreement because the contract represents an agreement between two or more parties to which the law binds them. We are not inclined to apply such a rule in the case of letters written by the opposition for what could be self-serving purposes.

In this case, NIGOS included Hedman's letters in the complaint to establish that Century Center sent it letters regarding the policy after the 1994 show and again in 1996. The letters themselves are not at issue in NIGOS's suit, which is based on why and how Century Center adopted the no firearm and ammunition policy. This difference distinguishes NIGOS's suit from the cases in which we have decided that documents written by a defendant and incorporated into the pleadings by a plaintiff trump allegations in the complaint. For example, in *Wade*, this Court affirmed the District Court's conclusion that the plaintiffs' Freedom of Information Act claim, which alleged that an agency improperly withheld records from them, was baseless. We looked not only at the letter by the defendant, but also at statements made by an employee of the defendant that had been incorporated by reference into the pleadings. The plaintiffs alleged that the statements contradicted the letter, thus demonstrating that the agency had engaged in a coverup. Taken together, however, we concluded the statements and letter did not contradict one another. The

statements did not suggest that the agency possessed the documents as the plaintiffs alleged they did. Thus, the employee did not contradict the letter, as the plaintiffs suggested. The information in these documents did not demonstrate that the inferences the plaintiffs believed we should draw from them were reasonable. The plaintiffs relied upon these documents to form the basis of their claim, but because the documents do not support it, we found dismissal appropriate. *See Wade,* 969 F.2d at 249–50. Unlike the plaintiffs in *Wade,* NIGOS did not rely upon Hedman's letters to establish the basis for its claim. Simply put, it did not attach Hedman's letters to show that Century Center adopted the no firearm and ammunition policy in order to suppress the organization's constitutional rights. Rather, it submitted the letters to establish that Century Center sent letters to NIGOS and that Century Center's new policy forbade firearms and ammunition inside the facility.

Similarly, in *Associated Builders, Inc. v. Alabama Power Co.,* the plaintiff alleged in its complaint that the defendant's prospectus contained misleading statements and attached a copy of the prospectus. 505 F.2d 97, 99–100 (5th Cir.1974). In examining the pleadings, the Fifth Circuit noted that when it examined the prospectus as a whole it directly refuted the plaintiff's allegations. Thus, it concluded the plaintiff had pleaded itself out of its claim and granted the defendant's motion to dismiss. *See id.* If NIGOS's allegations focused on the content of the letters, as the plaintiff's claims in *Associated Builders* had, then the court would have been correct in resolving the conflict by accepting each statement in the letters as true. Such an analysis is no different than that involved in contract disputes in which a plaintiff attaches a contract to the complaint and makes an allegation that the contract on its face clearly disputes. *See, e.g., Craigs,* 12 F.3d at 688–89; *Foshee,* 185 F.2d at 25; *Pelelas v. Caterpillar Tractor Co.,* 113 F.2d 629 (7th Cir.1940). As opposed to the decision in *Associated Builders,* Hedman's statements cannot summarily trump NIGOS's allegations because the letters themselves do not form the basis of NIGOS's claim against Century Center.

Finally, the letters standing on their own are simply not reliable enough to refute NIGOS's allegations. In addition to comparing the statements in attached exhibits to a plaintiff's allegations, courts should also consider the type of document in which the statement is being made and for what purpose the document is being offered. For example, a written contract represents an agreement between the parties. Letters written by the defendant, however, may contain self-serving statements not constrained by negotiations. Even though Hedman's letters include statements that stand in direct opposition to NIGOS's allegations, it would be unwise to accept these unilateral statements as explaining the entire story at this early point in the litigation. A party that has sought to abridge another's constitutional rights would be unlikely to call attention to its actions by directly stating that prohibiting the group from exercising its constitutional rights was the purpose behind a policy. People's motivations may not always be what people say they are. We make no judgment as to whether in the final analysis the safety rationale stated by Century Center is true or false, but only that in the Rule 12(c) context, the statements should not have been presumptively taken as true.

To require district courts to accept unilateral statements in documents written by a defendant as true simply because they were attached as exhibits to a plaintiff's complaint would be contrary to the concept of notice pleading. It would enable parties to hide behind untested, self-serving assertions. Although plaintiffs should exercise care in attaching documents to complaints, we do not believe they should be forced to accept as true every statement made within documents that do not by their nature imply some level of credibility. The position advanced by Century Center in its letter that it promulgated the policy with notice and opportunity for comment and decided to adopt it out of its valid concerns for safety may or may not be true, but there is no basis at this point in the proceedings to assign correctness to the unilateral statements. The factual crux of this case is why and how Century Center

adopted the no firearm and ammunition policy.

## IV. Conclusion

We conclude, therefore, that the unilateral statements contained in Century Center's letters attached as exhibits to NIGOS's complaint did not preempt its allegations and that the grant of Century Center's motion for judgment on the pleadings was erroneous. The District Court's Rule 12(c) dismissal is REVERSED and the case is REMANDED for further proceedings addressing NIGOS's constitutional claims.