In the

# United States Court of Appeals
### For the Seventh Circuit

_____

No. 06-3440

BERNICE KING, as Mother
and Next Friend of Jerica King,

*Plaintiff-Appellant*,

*v.*

EAST ST. LOUIS SCHOOL DISTRICT
189, CHESTER BLUETTE, NATHANIEL
ANDERSON, et al.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 C 335—**G. Patrick Murphy,** *Chief Judge.*

_____

ARGUED MAY 30, 2007—DECIDED AUGUST 7, 2007

_____

Before EASTERBROOK, *Chief Judge*, and RIPPLE and EVANS,
*Circuit Judges.*

RIPPLE, *Circuit Judge.* Bernice King brought this action
under 42 U.S.C. § 1983 on behalf of her daughter, Jerica
King, against East St. Louis School District 189 ("District"),
Dr. Chester Bluette, the principal of East St. Louis Senior
High School, and Dr. Nathaniel Anderson, the former
Superintendent of the District (collectively, "District
defendants"). Ms. King alleged that the District defendants

had violated Jerica's rights under the Due Process Clause of the Fourteenth Amendment by failing to protect her from a state-created danger. Invoking the district court's supplemental jurisdiction, Ms. King also brought state negligence claims against Bi-State Development Agency ("Bi-State"). The District defendants moved for summary judgment. Ms. King then sought leave to amend her complaint to add Frank Nave, a school counselor at East St. Louis Senior High School, as a defendant in his individual capacity.

The district court granted summary judgment in favor of the District defendants and denied Ms. King's request for leave to amend her complaint to add Mr. Nave. The court then declined to exercise its supplemental jurisdiction over Ms. King's claims against Bi-State and dismissed those claims as well.

Ms. King now appeals the district court's ruling granting summary judgment in favor of the District defendants and denying her request for leave to amend her complaint. For the reasons set forth in this opinion, we affirm the judgment of the district court in all respects.

# I

# BACKGROUND

## A.

Jerica King was a student at East St. Louis Senior High School. At the end of the school day on May 4, 2004, Jerica went to see Mr. Nave, a guidance counselor. She had no appointment, but wanted to discuss her grades and credits toward graduation. In the course of the meeting, Mr. Nave noticed that Jerica appeared upset and asked what was

troubling her. Jerica explained that she was having trouble with another student and proceeded to discuss the problem with Mr. Nave. The meeting lasted less than an hour. However, as a result of the meeting, Jerica missed the school bus. Before leaving Mr. Nave's office, Jerica stated that she had missed her bus and would need to call her mother. However, Jerica did not request to use the phone at that time, and Mr. Nave did not offer Jerica the use of his phone.

Although Jerica had missed the school bus, there was a public bus stop in front of the high school and a MetroLink station a couple of blocks from the school. After her meeting with Mr. Nave, Jerica exited the school building and checked to see if a public bus was waiting. When she did not see a bus, Jerica attempted to reenter the building to call her mother, but the school's doors were locked. An unidentified woman, to whom we shall refer, for the sake of simplicity, as the hall monitor, met Jerica at the door. Jerica informed the hall monitor that she wanted to reenter the school to call her mother. The hall monitor denied Jerica reentry, allegedly stating that reentry was against school policy.

Jerica then headed toward the MetroLink station. As she approached the MetroLink station, Jerica was abducted at gun-point by two men. The men took her to a house where she was raped. Jerica was released the following morning.

**B.**

Ms. King originally brought suit in June 2004 on behalf of Jerica. The action named as defendants the District, Dr. Bluette and Dr. Anderson. Ms. King contended that the

District defendants had created a danger to Jerica when she was left stranded outside of the school as a result of an official policy prohibiting students from reentering the school after school hours without supervision by a school employee. Ms. King asserted that Jerica's substantive due process rights were violated when she was injured as a result of the school's failure to protect her from this danger. Ms. King also contended that the District should have trained its employees to ensure that a student leaving the school after missing her school bus had transportation home. Ms. King asserted that, given the high crime rate in the area surrounding the school, the District's failure to train its employees in this manner evinced a deliberate indifference to the safety of its students.

In November 2005, after the close of discovery, Ms. King moved for voluntary dismissal of the action; the court granted the motion. Ms. King then filed this action in April 2006.

The complaint asserted the same claims against the District defendants and, invoking the district court's supplemental jurisdiction under 28 U.S.C. § 1367(a), added state negligence claims against Bi-State. The District defendants immediately moved for summary judgment. Following oral arguments on the District defendants' motion for summary judgment, Ms. King moved to amend her complaint to add Mr. Nave as a defendant in his individual capacity. Ms. King alleged that Mr. Nave had created a danger to Jerica by keeping her in their meeting until after the school buses had left for the day and that he had violated Jerica's substantive due process rights when he failed to ensure that she had transportation home.

The district court granted summary judgment in favor of the District defendants. It concluded that Ms. King had

failed to raise a genuine issue of fact with respect to the existence of a school policy or custom that could provide the basis for holding the District liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The court further concluded that, because there were no allegations that Drs. Bluette and Anderson had been involved personally in the alleged constitutional violation, there was no basis upon which to establish their individual liability. The court also held that Ms. King had not established that the District had acted with deliberate indifference to Jerica's constitutional rights by its failure to train its employees. Thus, the court concluded, Ms. King could not establish liability on the part of the District under *City of Canton v. Harris*, 489 U.S. 378 (1989). The court then declined to exercise supplemental jurisdiction over Ms. King's claims against Bi-State. The district court also denied Ms. King's motion for leave to amend her complaint; the court concluded that, because there was no evidence that Mr. Nave had exercised his authority to cause Jerica to remain at school, Mr. Nave had not created a danger to Jerica which would be actionable under § 1983.

## II

## DISCUSSION

Ms. King contends that the district court erred when it granted summary judgment in favor of the District defendants. She asserts that there is a genuine issue of material fact with respect to the existence of an official policy that would give rise to liability on the part of the District defendants under *Monell*. Ms. King also contends that the district court erred when it concluded that the District defendants could not be held liable for failing to train its

employees to ensure the safety of students who had missed their buses. Ms. King further asserts that the district court erred in denying her motion to amend her complaint because Mr. Nave had exercised his authority by meeting with Jerica after school.[1]

### A.

We review a district court's grant of summary judgment de novo. *Alexander v. City of South Bend*, 433 F.3d 550, 554 (7th Cir. 2006). Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view all facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Alexander*, 433 F.3d at 554. When the non-moving party bears the ultimate burden of proof at trial, the non-moving party must come forward with specific facts demonstrating an issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Ms. King contends that she has met her burden by coming forward with evidence that, when taken in the light most favorable to her, raises a genuine issue as to the existence of an official policy prohibiting students from reentering the school after school hours without official supervision. The record reflects that, on the day following Jerica's abduction, Ms. King met with Mr.

---

[1] Ms. King does not appeal the district court's order dismissing her claims against Bi-State. Following the court's dismissal, Ms. King brought an action against Bi-State in Illinois state court.

Nave. When he was told that Jerica had been denied reentry into the school, Mr. Nave allegedly stated that it was not policy to allow students to reenter the school after school hours. Further, in his deposition testimony, Dr. Bluette stated that, although he was unaware of any written policy regarding the presence of students in the school building after hours, the practice at East St. Louis Senior High School was that students present at such times were required to be under a staff person's supervision.

Taken in the light most favorable to Ms. King, this evidence raises a genuine issue of fact with respect to whether the hall monitor acted pursuant to an official policy regarding students in the school building after hours. Although nothing in the record reveals that there was a written policy in place regarding the presence of students in the school building after hours, municipal liability under § 1983 is not conditioned on the existence of a written policy. Liability under § 1983 extends to any policy or custom that "may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. A widespread practice may constitute an official policy with the force of law even though the practice itself is not reduced to written form. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). At the very least, when viewed in the light most favorable to Ms. King, the statements attributed to the hall monitor and to Mr. Nave present a triable issue of fact regarding whether there was a widespread practice prohibiting students from reentering the school after hours without official supervision.

However, a genuine factual dispute with respect to the existence of an official policy does not require reversal of the district court's decision because we can affirm the

decision of the district court on any ground fairly supported by the record. *Luna v. United States*, 454 F.3d 631, 635 (7th Cir. 2006). It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of Jerica's constitutional rights. *See Windle v. City of Marion, Indiana*, 321 F.3d 658, 663 (7th Cir. 2003).

The Supreme Court held in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), that the Due Process Clause of the Fourteenth Amendment generally does not impose upon the state a duty to protect individuals from harm by private actors. *Id.* at 195-96. As an exception to this general rule, the Court noted that the Constitution imposes a duty upon the state to protect individuals with whom it has a "special relationship" by virtue of the state's custody over the individual. *Id.* at 199-200.[2] The courts of appeals also have inferred from *DeShaney* that the substantive component of the Due Process Clause imposes upon the state a duty to protect individuals against dangers the state itself creates under the state-created danger doctrine. *See, e.g.*, *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998).

A fair reading of the decisions of this circuit and those of our sister circuits governing the state-created danger doctrine reveal the following three principles that must govern our analysis.[3] First, in order for the Due Process

---

[2] Ms. King does not assert that a special relationship existed between Jerica and the District that would give rise to a duty on the part of the District to protect Jerica.

[3] As our colleagues in the Second Circuit have noted, there is considerable variation among the circuits in their application of

(continued...)

Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual. *See Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006), *cert.*

---

[3] (...continued)

the state-created danger doctrine. *See Pena v. Deprisco*, 432 F.3d 98, 108 (2d Cir. 2005). Some circuits have articulated multi-part tests for determining whether an individual's constitutional rights have been violated under the state-created danger doctrine. *See, e.g., Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006), *cert. denied*, 75 U.S.L.W. 3469 (U.S. Mar. 4, 2007) (No. 06-563), (four-part test); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 464 (6th Cir. 2006) (three-part test); *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (five-part test); *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (six-part test). Other circuits simply ask whether the state created or increased the danger to the individual and whether the failure to protect against the danger shocked the conscience. *See, e.g., Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063-64 (9th Cir. 2006); *Fraternal Order of Police v. Williams*, 375 F.3d 1141, 1144 (D.C. Cir. 2004). We do not believe that these variations reflect fundamental doctrinal differences. Each of the various approaches limits liability under the state-created danger doctrine to conduct that violates an individual's substantive due process rights because it is arbitrary in the constitutional sense, i.e., shocks the conscience. We believe that the multi-part tests employed by the various circuits simply reflect an effort to guide the necessarily fact-bound inquiry into whether the official conduct shocks the conscience. *See County of Sacracmento v. Lewis*, 523 U.S. 833, 850 (1998) (citing *Betts v. Brady*, 316 U.S. 455, 462 (1942)); *see also Uhlrig v. Harder*, 64 F.3d 567, 572-74 (10th Cir. 1995) (noting that the Tenth Circuit had derived the elements of its test under the state-created danger doctrine from the Supreme Court's substantive due process jurisprudence).

*denied*, 75 U.S.L.W. 3469 (U.S. Mar. 4, 2007) (No. 06-563); *Windle*, 321 F.3d at 663; *Monfils*, 165 F.3d at 511. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. *See, e.g.*, *Kneipp v. Tedder*, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996) ("[T]he state-created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense."). Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (holding that executive action only offends substantive due process when it is arbitrary in a constitutional sense, i.e., conscience shocking); *see also Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (holding in the context of the state-created danger doctrine that government conduct does not violate substantive due process unless it is so egregious that it shocks the conscience); *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 710 n.10 (7th Cir. 2002) (noting that, to establish a constitutional violation under the state-created danger doctrine, the plaintiff must demonstrate that the state acted with deliberate indifference).

We need not explore in depth the first two components of a claim under the state-created danger doctrine because this case can be resolved expeditiously on the third prong of the analysis. As a matter of law, there is no basis in the record to permit a characterization of the District's actions that fairly may be described as shocking the conscience.

Conduct by executive officials which shocks the conscience is that conduct which may be deemed "arbitrary in

the constitutional sense." *Lewis*, 523 U.S. at 850 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). The inquiry into whether official conduct shocks the conscience in a given case is a necessarily fact-bound inquiry. *Lewis*, 523 U.S. at 850 (citing *Betts v. Brady*, 316 U.S. 455, 462 (1942)). The Supreme Court has noted that this standard lacks precise measurement, but has stated that the emphasis on whether conduct shocks the conscience points toward "the tort law's spectrum of liability." *Lewis*, 523 U.S. at 847-48. Only conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience. *Id.* at 849. Thus, when the circumstances permit public officials the opportunity for reasoned deliberation in their decisions, we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual. *See id.* at 851; *Armstrong v. Squadrito*, 152 F.3d 564, 576-77 (7th Cir. 1998). On the other hand, where circumstances call for hurried judgments in order to protect the public safety or maintain the public order, and thereby render reasoned deliberation impractical, conduct must reach a higher standard of culpability approaching malicious or intentional infliction of injury before we shall deem official conduct conscience shocking. *Lewis*, 523 U.S. at 852-53.

We need not determine the precise level of culpability necessary to shock the conscience in this case, however, because, in all cases, the conduct must be more culpable than mere negligence, which is "categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. Based on the record before us and assuming that there was a school district policy to prevent the unsupervised return of students to the school, it is clear that the policy had as its purpose curbing the unsupervised, after-

hours presence of the students in the school and the resulting damage to school property. There is no indication that the policy adopted was deliberately indifferent to the safety of the students. Any fault on the part of the school district in implementing such a policy was simple negligence in failing to account for all circumstances that may arise in which a student would seek to reenter the school.

Likewise, because there was no violation of Jerica's constitutional rights, there is no basis for liability on the part of the school district under *City of Canton* for the failure to train its employees. *See Windle*, 321 F.3d at 663.

**B**.

Ms. King also challenges the district court's decision denying her leave to amend her complaint to assert claims against Mr. Nave in his individual capacity under the state-created danger doctrine. We review a district court's decision denying a motion for leave to amend a complaint for an abuse of discretion. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). It is not an abuse of discretion to deny a motion to amend a complaint when such amendment would be futile. *See id.* An amendment is futile if the amended complaint would not survive a motion for summary judgment. *See Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

Mr. Nave did not act affirmatively to create or to increase a risk to Jerica. First of all, it is not clear from the record that Mr. Nave acted affirmatively to keep Jerica after school. Although he expanded the discussion beyond what she had contemplated, the record gives no basis for concluding that she was not willing to stay longer than she

may have anticipated or that she had any particular expectations about the length of the meeting. In any event, there is no basis upon which a jury could conclude that Mr. Nave had any idea of Jerica's transportation situation until the conclusion of their meeting. Assuming, arguendo, some affirmative act on the part of Mr. Nave, it nevertheless would be difficult to characterize his acts as anything other than simple negligence in failing to inquire into whether, following their session, Jerica needed assistance to arrange for transport.

Because Ms. King's proposed claims against Mr. Nave would not survive a motion for summary judgment, the district court did not abuse its discretion when it denied Ms. King leave to amend her complaint.

## Conclusion

For the reasons set forth in this opinion, we affirm the district court's entry of summary judgment in favor of the District defendants. We further conclude that the district court did not abuse its discretion when it denied Ms. King's request to amend her complaint.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-7-07