In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3621

TERITA BUCHANAN-MOORE, ET AL.,

*Plaintiffs-Appellants,*

*v.*

COUNTY OF MILWAUKEE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:07-cv-00730-CNC—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED FEBRUARY 26, 2009—DECIDED JUNE 29, 2009

Before BAUER, KANNE and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* In the summer of 2006, Sidney K. Gray, Jr., a mentally ill man, committed a string of crimes in Milwaukee which landed him into, then back out of, the Milwaukee County jail. The short stays and quick releases from confinement were allegedly the result of bureaucratic errors made by municipal agents. Furthermore, although Gray's history of mental illness was known to Milwaukee County authorities, he was not administered his medications while confined. Returned

to the Milwaukee streets for a final time on July 22, Gray broke into a home on the city's north side. Frank Moore, a neighbor, unwittingly crossed Gray's path. When he did, Gray shot and killed him.

Moore's survivors (Appellants) sued several entities including the County of Milwaukee, alleging, in part, a deprivation of due process. The district court granted Defendants' motion to dismiss on the pleadings, which we affirm on appeal.

## I.  BACKGROUND

According to the facts alleged in the Appellants' original complaint, Gray was well known to the County of Milwaukee (County) and to the City of Milwaukee (City). He was arrested by City police officers at least 35 times on 77 charges between July 1996 and July 2006. Many of those arrests stemmed from assaultive and violent attacks by Gray; one was for criminal trespass to a dwelling. Gray was committed to the County Mental Health Complex numerous times and placed on prescription medications. Over the course of his stays there, it became apparent to County doctors that the medications were successful in reducing Gray's assaultive behavior; however, Gray did not take the medications when left unsupervised. Consequently, the County frequently contacted Gray's family members following Gray's release.

On June 13, 2006, Gray was detained by City police after swinging a golf club at bystanders. At a civil commitment hearing, City police and County doctors testified

that Gray posed an immediate threat to others because of his assaultive behavior. The judge agreed, and ordered Gray committed. Less than a week later, the County released Gray with his necessary medications but without contacting his family. The next day, City police arrested Gray for invading an occupied home and took him to the County jail. Although the County knew that Gray's assaultive behavior could continue if he remained unmedicated, Gray was not administered his prescribed medications.

On June 24, 2006, while Gray remained in custody, City Police Officer Terrence Bender signed a criminal trespass complaint, drafted by the District Attorney's Office. According to protocol, the task of physically delivering the complaint to be numbered and filed with the state court resided with the City police. Unfortunately, this was not done; the court never received the complaint, and Gray was released by the County on July 9, 2006.

Approximately one week later, essentially the same episode was repeated. Gray again was arrested by City police for invading an occupied home, placed in the County jail, not administered his medication, and released four days later. It is unclear why charges were not filed against Gray.

On July 22, 2006, Frank Moore crossed paths with Gray and lost his life. Gray had broken into the home next door to Moore's by kicking in the front door. Moore walked up to the lot line in the small area separating the homes; Gray emerged from the side door and shot Moore in the head.

The missing criminal complaint from June 24, 2006, resurfaced in August 2006.

Appellants brought a civil rights action under 42 U.S.C. § 1983 against the City, the County, Officer Bender and other anonymous employees, alleging that these actors violated Moore's substantive due process rights by placing Moore in a position of danger that he would not have otherwise faced.

On January 18, 2008, Defendants moved for judgment on the pleadings, arguing that there was no constitutional right to be protected from violence by a private individual. On September 15, 2008, the district court granted the motion. Appellants now challenge only the dismissal of the charge alleging a violation of civil rights by the County as set forth in the complaint. Appellants contend that the County violated Moore's civil rights by releasing Gray after a 72-hour confinement during which the County failed to provide psychiatric medications to Gray. According to Appellants, those medications would have quelled Gray's assaultive behavior. Instead, by denying Gray his needed medications, the County "weaponized" a mentally ill man and "unleashed" him on the public, proximately causing Moore's death.

## II. DISCUSSION

We review a district court's ruling on a Rule 12(c) motion for judgment on the pleadings de novo. *Northern Indiana Gun and Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Rule 12(c) permits a party to

move for judgment after the complaint and answer have been filed by the parties. *See* Fed. R. Civ. P. 12(c). We review Rule 12(c) motions by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Pisciotta v. Old Nat. Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007). Thus, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Indiana Gun and Outdoor Shows, Inc.,* 163 F.3d at 452 (internal quotations omitted). However, we need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law. *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Kramer v. Village of North Fond du lac,* 384 F.3d 856, 861 (7th Cir. 2004).

The Due Process Clause of the Fourteenth Amendment places a limitation on the state's power to act; however, it generally does not impose upon the state a duty to protect individuals from harm by private actors. *Monfils v. Taylor,* 165 F.3d 511, 516 (7th Cir. 1998); *King v. East St. Louis School Dist.,* 496 F.3d 812, 817-18 (7th Cir. 2007). Stated another way, its purpose is, "to protect the people from the State, not to ensure that the State pro-

tect[s] them from each other." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989).

Two exceptions to this principle have arisen from *DeShaney*. First, the state is duty-bound to protect individuals with whom it has a "special relationship"; that is, when a state has custody over a person, it must protect him because no alternate avenues of aid exist. *Monfils*, 165 F.3d at 516. Second, the so-called state-created danger exception provides that "liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Id.* (internal quotations omitted). It is under this doctrine that Appellants advance their claim.

In order for the Due Process Clause to impose upon the state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual, *King,* 496 F.3d at 818, and the state's failure to protect that individual from such a danger must be the proximate cause of the injury to the individual. *Id.* And last, "because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience." *Id*.

We need not explore the first component of Appellants' claim under the state-created danger doctrine because we can resolve this case on the second prong of the analysis. Appellants' complaint must allege facts suggesting that the County's conduct was the proximate cause of Moore's death; that is, Moore must have been a fore-

seeable victim of the County's acts. *King*, 496 F.3d at 818. It fails to do so.

To advance their argument, Appellants rely heavily on *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993). In that case, a drunk driver crossed the center line of the highway and crashed into the Reeds' car. Earlier that day, police had arrested the original driver of the car, leaving a drunk passenger behind. Based on the appellant's allegation that the officers removed a sober driver from the driver's seat and knowingly replaced him with an intoxicated driver, we found that the plaintiffs had sufficiently stated a claim that the state affirmatively created a danger for the other drivers on the road and that the plaintiffs were foreseeable victims.

However, we also noted that foreseeability hinged on the fact that the dangers presented by drunk drivers were familiar and specific; in addition, the threat of harm to other motorists was limited in both time and scope. *Reed*, 986 F.2d at 1127. Here, no such limiting factors are present.

In the factual scenario presented in *Reed*, the police could be expected to know that the intoxicated man they placed behind the wheel suffered from impaired judgment and diminished motor skills; these were dangers both familiar and specific that the police chose not to heed. In this case, conversely, the complaint does not allege facts suggesting that Gray's access to a gun, or propensity toward homicide, were specific dangers that were familiar to the County. While Gray had been arrested for home invasion and assaultive

conduct, Appellants do not allege that Gray had previously carried a weapon or shot someone. As the district court noted, "Gray's acquisition of a gun, and its use on an innocent bystander" were events that were "unpredictable rather than legally foreseeable."

Also, in *Reed*, the plaintiffs were within a small, defined group of potential victims. The drunk driver jeopardized the safety of only those motorists traveling on the same highway, and only for a matter of hours. When the driver sobered up, the threat would be dispelled. Here, the complaint does not allege facts suggesting that Gray posed a threat to a definable population. Dangers to the public at large are insufficient for constitutional purposes. *Martinez v. State of California*, 444 U.S. 277, 285 (1980). The complaint alleges no facts suggesting that the County knew that Moore, as distinguished from the public at large, faced any special danger.

Appellants allege that Moore was a foreseeable victim because he lived on Milwaukee's "north side," the same section of town in which the County released Gray. But Milwaukee's "north side" represents a large geographic and heavily populated area.[1] The danger posed to Moore by his geographic locale was shared by the thousands of others who lived in that section of town as well as those living in any community accessible to Gray by foot, and perhaps even by public transit. Such a generalized, amorphous zone of danger is insufficient to trigger a state duty to protect.

---

[1] The district court took judicial notice of this fact.

Furthermore, unlike in *Reed*, the danger was not of limited duration. To the extent Gray posed any foreseeable danger upon his release, it was a danger that was indefinite. Gray's mental illness and propensity for criminal acts existed without temporal boundaries.

As the district court noted, proximate cause "is a fact specific inquiry, involving a consideration of time, geography, range of potential victims, and the nature of harm that occurred." Perhaps it can be said that if the County had not released Gray when it did, Moore would be alive today. However, the facts as alleged amount to only a "but-for" casual link, they do not state a claim that Moore's death was proximately caused by the County's acts. Moore's death was simply too remote a consequence of the County's actions to hold the County responsible under the federal civil rights law.

Because relief could not be granted under any set of facts that could be proved consistent with the allegations in the complaint, Appellants' claim must fail.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's granting of the County's motion to dismiss.