NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 21, 2019[*]
Decided December 9, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 18-2680

| | |
|---|---|
| JASON GRANT,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-cv-379-pp |
| CARA A. SCHMIDT, *et al.*,<br>    *Defendants-Appellees*. | Pamela Pepper,<br>*Chief Judge*. |

**O R D E R**

One week after his release from prison, Jason Grant experienced a psychotic episode during which he strangled and attempted to kill a woman. He entered a plea of not guilty by reason of mental defect to the resulting charges, and a state-court judge committed him to the custody of the Wisconsin Department of Health Services. Grant

---

[*] The defendants were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

then sued a prison psychologist and other prison officials for deliberately failing to treat his serious mental illness. *See* 42 U.S.C. § 1983. The district court screened the complaint, 18 U.S.C. § 1915A(b), and dismissed it with prejudice for failure to state a claim. Because Grant cannot plausibly allege that committing a new crime after his release was a foreseeable consequence of his lack of treatment, we affirm.

In his complaint Grant alleges that he became an inmate at Dodge Correctional Institution in 2011. Dodge's officials, he says, were aware of his extensive history of mental disorders from his medical and court records (he previously had completed court-ordered mental-health treatment administered by the Department of Health Services) but did not treat his serious mental illness while he was incarcerated. He singled out prison psychologist Cara Schmidt for failing to adequately screen his mental-health needs at intake.

In 2014 the Department of Corrections released him—without any medication or mental-health treatment plan. Seven days later, he experienced an episode of "multi-faceted psychosis" and attemped to strangle a woman to death. The state prosecuted him for strangulation and suffocation, false imprisonment, and attempted first-degree intentional homicide. After accepting Grant's plea of not guilty by reason of mental defect to the charges, a state-court judge found that he posed a significant risk of bodily injury to himself and the community and committed him to the Department of Health Services for a 60-year term. *See* WIS. STAT. § 971.17(b).

Grant then sued several prison employees—Schmidt, Robert De Young (the supervisor of the prison's psychiatric unit), and the social worker who conducted his exit screening—for deliberately failing to treat his mental illness and releasing him from custody without a post-release treatment plan. He also sued Dodge's warden, identified in the complaint as "John Doe," for failing to implement adequate mental-health screening processes for his intake and release. (For clarity, we have amended the caption to begin with the first named defendant.)

At screening, the district court dismissed Grant's complaint with prejudice for failure to state a claim. Applying the test for deliberate indifference set forth in *Farmer v. Brennan*, 511 U.S. 825, 842 (1994), the court determined that Grant satisfactorily alleged an objectively serious medical condition but did not set forth facts showing that the defendants acted with a sufficiently culpable state of mind. With regard to Grant's claims against Schmidt, the court reasoned that he did not explain how her intake screening was inadequate or "how she could have known that he posed a serious risk of killing someone four years into the future." Regarding his claims against the warden,

the court determined that Grant did not explain why his screening process was inadequate, or how a mental-health screening in 2011 could have predicted that he posed a serious risk of harm to himself or that he would commit a homicide in 2014. As for De Young and the social worker, the court wrote that Grant had not alleged that either was aware of any risk he would commit a homicide, or that either deliberately disregarded that risk.

Eleven days after judgment, Grant sought reconsideration. He elaborated that Schmidt knew about his mental-health needs and history, that he did not receive any mental-health treatment while incarcerated between 2011 and 2014, and that he would have received a pre-release mental-health treatment plan if Schmidt had followed the policies and procedures of the Department of Corrections during his intake screening. The district court denied the motion, concluding that he had not introduced any new information or identified an error of law or fact.

On appeal Grant contends that the district court should have allowed him to proceed on his claims. But to state an Eighth Amendment claim, Grant had to allege that a prison official was aware of a serious medical condition and either knowingly or deliberately disregarded it. *Farmer*, 511 U.S. at 842; *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). As he did not allege in his complaint that the defendants knew of his mental disorders and need for treatment, the district court correctly determined that he failed to state a claim for deliberate indifference.

Ordinarily it is the practice in this circuit to grant leave to amend or to dismiss complaints screened under § 1915A to without prejudice. *See Perez v. Fenoglio,* 792 F.3d 768, 783 (7th Cir. 2015). But Grant's brief shows that amendment to add allegations about the defendants' mental states would be futile because he cannot plausibly allege that the defendants could reasonably foresee that he would commit a new crime after his release as a consequence of his lack of treatment. *See Tate v. SCR Med. Transp.,* 809 F.3d 343, 346 (7th Cir. 2015).

While Grant's brief suggests that Schmidt may have known of his disorders and need for treatment when she conducted his screening, the crime is too remote a consequence of Schmidt's actions to hold her responsible under federal civil rights law. *See Martinez v. State of Cal.,* 444 U.S. 277, 285 (1980) (death of girl killed by parolee some five months after release was "too remote a consequence" of parole officers' action in releasing him to hold them responsible under § 1983); *Buchanan-Moore v. Cty. of Milwaukee,* 570 F.3d 824 (7th Cir. 2009) (death of neighbor killed by mentally-ill offender days after his release from mental health complex was not foreseeable result of county

government's failure to medicate him while he was in custody). And none of Grant's submissions suggests that Schmidt interacted with him after the screening. Under the circumstances of this case, in which Grant's injury occurred three years after Schmidt's last encounter with him, Grant cannot plausibly allege a set of facts that would cure this deficiency. We express no opinion on whether the victim of Grant's post-release crime would have a claim against the prison's medical staff or whether prisoners may ever obtain damages on account of a post-release crime that they commit.

Grant's submissions also demonstrate that he cannot patch up his complaint to allege that the remaining defendants were aware of and deliberately disregarded the risks associated with his mental illness. For instance, regarding De Young, Grant's later filings in the district court specify that the supervisor neither treated him personally nor interacted with him otherwise. Section 1983 does not allow actions against individuals merely for their status as the supervisors of others. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). As for the warden, Grant accused him of failing to implement adequate mental-health screening procedures at intake and release. But Grant's later submissions do not suggest that the warden knew anything of his mental disorders or that he personally reviewed Grant's records. Public officials are accountable for their own conduct; they are not vicariously liable for the acts of subordinates. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203–05 (7th Cir. 2012) (en banc). (We further note, but need not decide, that naming a warden as "John Doe" may not suffice to state any claim.) Lastly, regarding the social worker who conducted his exit screening, Grant pleaded himself out of court by alleging conduct that sounded in negligence rather than deliberate indifference (he alleged that she failed "to detect she was releasing a[n] inmate with a known mental disease in the community to shift for himself, without medication, treatment, and the mean[s] to acquire medication"). Negligence is not enough to state a claim for deliberate indifference, *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2015) (en banc); *Sanville v. McCaughtry*, 266 F.3d 724, 735 (7th Cir. 2001), and Grant's later filings do not suggest that the social worker appreciated the severity of his medical condition or that her disregard of his need for treatment was deliberate.

AFFIRMED