**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1589

GORDON GOINES,

Plaintiff - Appellant,

v.

VALLEY COMMUNITY SERVICES BOARD; DAVID SHAW; ROBERT DEAN; D. L. WILLIAMS; JENNA RHODES; JOHN DOES 1-10,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:14-cv-00065-EKD-JCH)

Argued:  January 26, 2016                Decided:  May 9, 2016

Before TRAXLER, Chief Judge, and WILKINSON and NIEMEYER, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Chief Judge Traxler wrote the opinion in which Judge Wilkinson and Judge Niemeyer joined.  Judge Niemeyer wrote a separate concurring opinion.

Timothy Lawrence Coffield, COFFIELD PLLC, Keswick, Virginia; Jesse Howard Baker, LAW OFFICE OF JESSE BAKER IV, Gainesville, Virginia, for Appellant.  Richard Hustis Milnor, ZUNKA MILNOR & CARTER, LTD, Charlottesville, Virginia; James Morton Bowling, ST. JOHN, BOWLING, LAWRENCE & QUAGLIANA, LLP, Charlottesville, Virginia; Rosalie Fessier, TIMBERLAKE, SMITH, THOMAS & MOSES, PC, Staunton, Virginia, for Appellees.

TRAXLER, Chief Judge:

Gordon Goines went to the police station to report the theft of his cable services and ended up involuntarily detained for six days for a mental-health evaluation. Goines thereafter brought this action under 42 U.S.C. § 1983, alleging that he was unlawfully seized without probable cause in violation of the Fourth and Fourteenth Amendments. Goines named as defendants the police officers who initially detained him, as well as the mental-health worker who evaluated him, and the mental-health worker's employer. The district court granted the defendants' motion to dismiss for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), and dismissed the complaint in its entirety. We conclude that the claims against the mental-health evaluator and her employer were properly dismissed. As to the two officers who initially took Goines into custody, however, we find the allegations of Goines' complaint sufficient to survive the motion to dismiss. We therefore affirm the district court's order in part, vacate in part, and remand for further proceedings.

I.

In § 1983 actions, government officials are entitled to qualified immunity so long as they have not violated "clearly established statutory or constitutional rights of which a

2

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The contours of the law relevant to this case are easily stated. "[T]he general right to be free from seizure unless probable cause exists is clearly established in the mental health seizure context. . . . [A]n officer must have probable cause to believe that the individual posed a danger to himself or others before involuntarily detaining the individual." Bailey v. Kennedy, 349 F.3d 731, 741 (4th Cir. 2003) (internal quotation marks and alterations omitted). We will consider the sufficiency of Goines' complaint in light of this standard.

## II.

According to the allegations of the complaint, Goines suffers from cerebellar ataxia, a neurological condition that causes him difficulties with his speech, balance, and certain fine motor functions. The disorder does not affect Goines' cognitive functioning, and he has no mental health issues.

In May 2014, Goines began experiencing problems with his cable television service -- the service would intermittently disconnect and the television would freeze and produce loud line noises while it was turned on. A technician with the cable provider visited Goines on May 15 and determined that an unknown neighbor had spliced into Goines' cable, causing the disconnections and line noises. The technician advised Goines

3

to report the theft to the police. Goines thereafter walked across the street to the police station and reported the cable theft, telling the police that he did not want to confront the neighbor because he did not know how the neighbor would react and he did not want to get into a fight.

The officer to whom Goines first spoke turned him over to defendant officers David Shaw and Robert Dean (together, the "Officers"). Goines agreed to take the Officers back to his apartment so he could demonstrate the problem. Because the Officers did not turn on the television, however, they did not hear the noises. The Officers asked Goines if he had any mental health issues, which Goines denied, and asked whether "he 'wanted to talk to someone.'" J.A 12. Believing that he would be speaking to someone about the cable theft, Goines answered in the affirmative. The Officers then handcuffed Goines, walked him back to the police station, and placed him in the back of a patrol car. Goines told the Officers he wanted to go home and asked to be let out of the car, but Officer Dean told Goines "'that wasn't an option.'" J.A. 12. The Officers transported Goines, involuntarily, to the Augusta County Medical Center, where he was strip-searched and handcuffed to a table. While at the Medical Center, the Officers learned that Goines owned a registered handgun. Goines volunteered to give the gun to the

4

Officers if "'there was a problem,'" J.A. 13, and Goines reiterated his desire to go home.

Goines was evaluated at the Medical Center by defendant Jenna Rhodes, an emergency services and intake clinician employed by defendant Valley Community Services Board. Goines attached as an exhibit to his complaint the "Preadmission Screening Report" completed by Rhodes. J.A. 22. In the Screening Report, Rhodes described her personal observations of Goines as well as information about Goines' statements and behavior that the Officers had provided her. Based on her observations and the Officers' information, Rhodes concluded that Goines suffered from a mental illness and that he posed a threat to the safety of his neighbors, and Rhodes filed a petition seeking to have Goines involuntarily detained. The magistrate judge granted the petition at 8:41 p.m. on May 15, 2014, and issued a temporary detention order. Goines thereafter was transported to Crossroads Mental Health Center, where he remained until he was released on May 20, 2014.

The facts set out above form the core of Goines' constitutional claims that the defendants violated the Fourth Amendment because they lacked probable cause to believe Goines had a mental illness and was a threat to himself or others. In addition to these facts, however, Goines' complaint contains several references to a report (the "Incident Report") that

5

Officer Shaw prepared sometime after the interaction with Goines.

Quoting from the Incident Report, the complaint states that the first police officer to whom Goines spoke told Officers Shaw and Dean that Goines "'seemed to have some mental health issues going on over an issue with a television.'" J.A. 11. The complaint also alleges that the Officers "ignored or did not take the time to understand" the nature of Goines' problem -- that someone had spliced into his cable, which was causing line noises and other issues when the television was turned on. As an apparent indication of the Officers' failure to understand, the complaint then quotes Shaw's statement in the Incident Report that Goines told the Officers that "'there was a clicking noise in the wall because someone outside was controlling his T.V.'" J.A. 11. The complaint, again quoting from the Incident Report, states that even though Goines denied having any mental health issues, the Officers "[n]evertheless . . . concluded that Goines was 'having irrational issues and hearing things.'" J.A. 12.

Although Goines quoted the Incident Report in his complaint, he did not attach it as an exhibit or explicitly incorporate the entire report by reference. The defendants, however, attached a copy of the Incident Report to their motion to dismiss and referred to other parts of the Incident Report --

6

*i.e.*, parts not quoted by Goines -- when arguing that Goines failed to state a claim.

While a 12(b)(6) motion focuses on the allegations of the complaint, it is well established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was "integral to the complaint and authentic." Sec'y of State For Defence v. Trimble Nav. Ltd., 484 F.3d 700, 705 (4th Cir. 2007). The district court therefore treated the Incident Report as if it had been attached to the complaint and considered the contents of the Incident Report. Recognizing the general rule that the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint, see S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013), the district court believed that because the Incident Report was prepared by the Officers and reflected their version of the relevant events, an exception to the exhibit-prevails rule was required. Accordingly, when considering the sufficiency of Goines' complaint, the district court treated the contents of the Incident Report as true, except where "the complaint expressly conflicts with, or contradicts any factual allegations in the . . . Incident Report." J.A. 187-88 (emphasis added).

7

As to the constitutional claims against the Officers, the district court determined that the facts reflected in the complaint and Incident Report established that the Officers were entitled to qualified immunity. In the district court's view, "it was objectively reasonable for the officers to conclude that there was probable cause to believe Goines was suffering from a mental illness," and it was likewise objectively reasonable to believe "that there was probable cause to believe Goines posed a threat to others." J.A. 200. Central to the court's analysis were certain "facts" appearing in the Incident Report but not in the Complaint: (1) that Goines told the Officers while they were in his apartment that he was then hearing noises that the Officers could not hear and repeatedly said that "someone outside [was] controlling" his television, J.A. 39, which made it objectively reasonable for the Officers to conclude that Goines had a mental illness; and (2) that Goines, in response to a series of questions from the Officers, stated that he would "hurt" his neighbors "by punching them," J.A. 39, which made it objectively reasonable for the Officers to conclude that Goines was a threat to others. The court therefore dismissed the claims against the Officers.

The court likewise dismissed the constitutional claims against Rhodes and her employer. As previously noted, Goines attached the Screening Report prepared by Rhodes to his

8

complaint.  The district court took the same approach with the Screening Report as it did with the Incident Report -- unless the complaint explicitly contradicted the Screening Report, the court accepted the contents of the Screening Report as true. The district court concluded that, in light of the information set out in the Screening Report, Rhodes had probable cause to believe that Goines had a mental illness and was a danger to others.  Accordingly, the court dismissed the claims against Rhodes and her employer.

This appeal followed.

III.

We begin with Goines' claims against the Officers.  Goines argues that the district court erred in treating the allegations of the Incident Report as true and that the allegations in his complaint establish that the Officers lacked probable cause to believe that he was mentally ill or that he posed a danger to himself or others.  As noted above, the district court relied on the Incident Report to dismiss the claim against the Officers. The question, then, is whether the court's reliance on that document was proper.

A.

"A motion to dismiss tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and our evaluation is thus generally limited to a review of the

9

allegations of the complaint itself.  However, we also consider documents that are explicitly incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and those attached to the complaint as exhibits, see Fed. R. Civ. P. 10(c).  And, as mentioned above, we may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.  See Trimble, 484 F.3d at 705; Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

Whether the court properly considered the Incident Report, which was quoted in but not attached to the complaint, is not entirely clear.  Although the complaint included a few quotes from and references to the Incident Report, Goines' claims do not turn on, nor are they otherwise based on, statements contained in the Incident Report.  See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").  Under these circumstances, the Incident Report arguably is not integral to the complaint and therefore should not have been considered by the district court.  See Chambers v.

10

Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a document is "integral to the complaint" "where the complaint relies heavily upon its terms and effect" (internal quotation marks omitted)); Smith v. Hogan, 794 F.3d 249, 255 (2d Cir. 2015) (document with "no independent legal significance to [plaintiff's] claim" was not integral to complaint).

Nonetheless, because Goines does not argue otherwise, we will assume without deciding that the Incident Report was integral to the complaint. And because there is no question about the authenticity of the Incident Report, we will therefore assume that the district court properly treated the Incident Report as if it had been attached to the complaint. The more difficult question is whether the district court properly treated the factual contents of the Incident Report as true.

As previously noted, the district court's approach to this question began with its recognition of the exhibit-prevails rule, which provides that "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)); accord S. Walk, 713 F.3d at 182. Under the rule, if a plaintiff "attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." Thompson v. Illinois Dep't of

11

Prof'l Regulation, 300 F.3d 750, 754 (7th Cir. 2002). Accordingly, if a breach-of-contract plaintiff alleges a failure to perform an act required by the contract, the contract's description of the defendant's duties will prevail over the plaintiff's contrary characterization. See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 181 (4th Cir. 2000) (district court properly dismissed breach-of-lease claim where terms of attached lease established that landlord had the contractual right to take action challenged by the plaintiff); cf. S. Walk, 713 F.3d at 182 (looking to terms of attached contract to conclude that plaintiff seeking to invalidate portions of the contract lacked standing). Similarly, if a securities-fraud plaintiff alleges that the defendant's prospectus failed to disclose a material risk, the claim will be dismissed if the prospectus shows the disclosure was in fact made. See Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 625 (4th Cir. 2008) (where securities-fraud complaint quoted from investment analysts' reports to support claim that defendant intentionally misled the public, district court properly reviewed reports in their entirety when dismissing the complaint).

Animating the exhibit-prevails rule is the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document. Plaintiffs

12

attach exhibits to their complaints for all sorts of reasons, however, see EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 778 (7th Cir. 2007), and it is not always appropriate to conclude that the plaintiff has adopted the contents of an attached document, see N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 455 (7th Cir. 1998) (explaining that "Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact"). Indeed, if attached documents were always treated as if their contents were adopted by the plaintiff, a libel plaintiff would plead himself out of court simply by attaching the libelous writing to his complaint. See Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir. 1995) ("[A] libel plaintiff may attach the writing alleged in the complaint to be libelous without risk that the court will deem true all libels in it."). Accordingly, before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it. Cf. N. Ind. Gun & Outdoor, 163 F.3d at 455 (before treating contents of attached document as true, courts should "consider why a plaintiff attached the document[], who authored the document[], and the reliability of the document[]").

13

When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper.  See, e.g., Am. Chiropractic, 367 F.3d at 233-35 (dismissing civil RICO claim despite complaint's allegation of justifiable reliance where terms of document upon which claim was based established that any reliance would not have been justified).  But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true.  For example, if a prisoner attaches an unfavorable decision from a prison tribunal to show that he has exhausted his administrative remedies, he does not thereby adopt the factual findings of that unfavorable decision.  See Carroll v. Yates, 362 F.3d 984, 986 (7th Cir. 2004) (rejecting as "fantastic" the argument that "all facts contained in any attachments to a complaint are automatically deemed facts alleged as part of the complaint" (internal quotation marks and alterations omitted)).  Similarly, if a plaintiff attaches or references a report prepared by a third-party to show how he learned of certain facts alleged in his complaint, he does not automatically adopt all of the factual conclusions contained in the report.  See Banneker Ventures, LLC v. Graham, 798 F.3d

14

1119, 1134 (D.C. Cir. 2015) ("Banneker referred to some of the report's recitations to show how it learned some facts in the complaint, but it did not purport to and was not required to adopt the factual contents of the report wholesale.").

The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant. Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff. Treating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it for purposes other than truthfulness, would be "contrary to the concept of notice pleading" and "would enable parties to hide behind untested, self-serving assertions." N. Ind. Gun & Outdoor, 163 F.3d at 456.

B.

In this case, we think it clear that Goines did not adopt the Incident Report as true simply by relying on the Report for some of the facts alleged in his complaint. As previously noted, Goines does not base his claims on the Incident Report -- that is, no portion of any of his claims is dependent upon the truth of any statements contained in the Incident Report. Instead, Goines' complaint tells the story of police who assumed

15

from Goines' physical difficulties that he was mentally ill and never actually listened to what Goines was telling them, and Goines referred to portions of the Incident Report to support that theory of the case. Thus, Goines alleged that he is not mentally ill, but then quoted from the Incident Report that the first police officer to whom Goines spoke told the Officers that Goines "'seemed to have some mental health issues.'" J.A. 11. Goines alleged that the line noises and other problems with his television service occurred when the television was turned on and that the Officers did not hear the line noises because they never turned on the television. See Complaint, J.A. 10-12, ¶¶ 18-19, 27. Goines juxtaposed these clear allegations against the statement in the Incident Report that Goines told the Officers that "'there was a clicking noise in the wall because someone outside was controlling his T.V.,'" J.A. 11, which Goines contended showed that the Officers "ignored or did not take the time to understand Goines' complaint," id. Likewise, Goines alleged that he told the Officers that he did not have any "mental health issues," but that the Officers "[n]evertheless" determined that Goines was "'having irrational issues and hearing things.'" J.A. 12. Thus, when the complaint is read in the light most favorable to Goines and in light of his theory of the case, it is apparent that Goines' purpose in quoting from the Incident Report was not to assert the

16

truthfulness of the statements contained in the Report, but instead to illustrate the mistakes he believed were made by the Officers.

Because Goines did not rely on the Incident Report for its truthfulness, the district court erred by treating as true the factual statements contained in the Incident Report. The district court instead should have treated the Report as what it was -- a document prepared by Officer Shaw representing the Officers' view of events, not a document representing the true facts. See Jones v. City of Cincinnati, 521 F.3d 555, 561 (6th Cir. 2008) (in case where plaintiff attached to his complaint transcripts of investigatory interviews with defendant police officers, declining to "assume everything the officers said in those interviews is true"). The court likewise should have treated Goines' allegations regarding the Incident Report as what they were -- allegations that the Officers made the quoted statements, not allegations that the statements themselves were true. See id. ("[W]e treat the exhibit as an allegation that the officers made the statements in the transcript and we treat that allegation as true. . . . We do not accept as true, however, that [the officers' statements are] accurate or true."); N. Ind. Gun & Outdoor, 163 F.3d at 455 ("The letters that [the plaintiff] attached to its complaint demonstrate that [the defendant] stated it adopted the policy for safety reasons

17

during a public meeting that had been publicized and during which individuals opposed to the policy had the opportunity to voice their concerns. [Attaching the letters to the complaint] does not, however, establish the truth of these unilateral statements." (emphasis added)).

C.

When the statements in the Incident Report are treated not as true, but as assertions made by the Officers, we have little difficulty in concluding that Goines' claims against the Officers should not have been dismissed.

To withstand a motion to dismiss, a § 1983 plaintiff must allege facts that, "if true, show a violation of clearly established constitutional rights." Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009). "[T]he general right to be free from seizure unless probable cause exists is clearly established in the mental health seizure context." Bailey, 349 F.3d at 741 (internal quotation marks and alterations omitted). "[P]robable cause to seize a person for a psychological evaluation [exists] when the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man to believe that the person poses a danger to himself or others." Cloaninger, 555 F.3d at 334 (internal quotation marks omitted).

18

Goines alleged that he has no mental illness, and the facts he described in the complaint -- noises in the television line and signal disruption caused by a neighbor splicing into Goines' cable line and a desire not to fight with the thieving neighbor -- provided no basis for the Officers to have reasonably concluded otherwise. While the Incident Report indicates that Goines told the Officers that he was hearing noises in the apartment that they could not hear, that assertion cannot be treated as true, and there are no facts alleged in the complaint that would permit the inference that Goines heard noises in the apartment. Indeed, given Goines' allegations that the noise occurred when the television was turned on and that the officers never turned on the television, the only permissible inference that can be drawn from the complaint is that Goines did not hear noises because the television was never turned on. See, e.g., United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (explaining that when reviewing a 12(b)(6) motion to dismiss, "we construe facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor" (citation, alteration, and internal quotation marks omitted)).

The facts as alleged in the complaint likewise provided no reasonable basis for the Officers to have concluded that Goines was a danger to himself or others. Goines alleged that he went

19

to the police "because he did not know how the neighbor would react" to a confrontation with Goines and "he did not want to 'get in a fight' with the neighbor," J.A. 11, and that he never made "any threat to do harm to any person or to himself," J.A. 12. These allegations are contradicted by assertions contained in the Incident Report, but, again, those assertions cannot be treated as true. By quoting from and referring to the Incident Report, Goines effectively alleged that the Officers viewed the facts differently, but he did not adopt the Officers' version of the facts as his own. Goines' preemptive acknowledgement of the defense may be unusual as a matter of pleading style, but it does not make Goines' allegations of the relevant facts implausible or otherwise support a Rule 12(b)(6) dismissal in the face of disputed facts. See Gale v. Hyde Park Bank, 384 F.3d 451, 452 (7th Cir. 2004) ("[T]he plaintiff may tell the court what his adversary has said without throwing in the towel.").

Accepting the allegations of the complaint as true, Goines, though having speech and other physical difficulties, exhibited no signs of mental illness and made no threats to harm himself or others, but instead sought the help of the police to avoid a confrontation and potential fight with a neighbor who had spliced into Goines' cable line. Under these facts, the Officers lacked probable cause for an emergency mental-health

20

detention, and Goines' complaint therefore alleges a constitutional violation. See Bailey, 349 F.3d at 739 ("If probable cause was lacking, then [the plaintiff] has successfully asserted the violation of a constitutional right -- specifically his Fourth Amendment right against unreasonable seizure . . . .").

And again accepting Goines' allegations as true, the constitutional violation alleged is one for which the Officers would not be entitled to qualified immunity. "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001); see Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996) ("If the right was not clearly established at the relevant time or if a reasonable officer might not have known his or her conduct violated that right, the officer is entitled to immunity.").

Probable cause, of course, is a "fluid concept that cannot be reduced to a neat set of legal rules," Bailey, 349 F.3d at

21

739 (internal quotation marks omitted), and our cases applying the concept in the mental-health context are perhaps not easily reduced to bright-line rules. Nonetheless, the facts as alleged by Goines -- the involuntary detention of a man with physical disabilities who exhibited no signs of mental illness and made no threats of harm -- are sufficiently beyond the realm of probable cause that no reasonable police officer would find them adequate. See id. at 740 ("The law does not permit random or baseless detention of citizens for psychological evaluations." (internal quotation marks omitted)).

Because Goines' complaint plausibly alleges facts that no reasonable officer would have found sufficient to justify an emergency mental-health detention, the complaint states a constitutional violation by the Officers for which they would not be entitled to qualified immunity.

The whole area of civil commitment involves a number of difficult judgment calls, especially for officers with little or no training in mental health issues. Under the facts as alleged, however, the officers failed to make sufficient inquiry. As noted, this was not a matter of a third-party complaint. Goines himself had reported to the stationhouse seeking police assistance. The officers, however, simply assumed a threat without exploring whether the situation reflected some misunderstanding, a bizarre but non-dangerous

22

incident, or something more problematic. Further inquiry is useful in the sorts of situations where officers are not presented with emergency circumstances or a "substantial likelihood" of harmful behavior. Va. Code Ann. § 37.2-808. We therefore vacate the district court's dismissal of the claims against the Officers and remand for further proceedings on those claims.[1] See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." (internal quotation marks omitted)).

IV.

We turn now to Goines' claims against Jenna Rhodes, the mental-health evaluator, and her employer, Valley Community Services Board.

Goines' claims against these defendants, as we understand them, proceed on a very different path from his claims against the Officers. As we explained in the previous section, because

---

[1] In addition to Officers Shaw and Dean, Goines named Officer D.L. Williams as a defendant. Although the district court dismissed the claims against Williams, Goines does not challenge that dismissal on appeal. Goines has thus abandoned his claims against Williams, and we therefore affirm the district court's dismissal of those claims. See, e.g., Suarez-Valenzuela v. Holder, 714 F.3d 241, 248–49 (4th Cir. 2013) (issues not raised in the argument section of the opening brief are abandoned).

23

Goines' claims against the Officers were not based on the Incident Report and Goines did not otherwise adopt it, we did not treat the contents of the Incident Report as true when evaluating the claims against the Officers. The claims against Rhodes and her employer, however, are based on the Screening Report. That is, Goines does not contend that the Officers did not provide the information set out in the Screening Report or that Rhodes otherwise fabricated the information in the Report. Instead, Goines contends that the information in the Screening Report is not sufficient to provide probable cause for a mental-health detention. See Complaint, J.A. 16 ("Based on the observations of Goines as set forth in the Preadmission Screening Report, Defendant Rhodes lacked probable cause . . . ."); Brief of Appellant at 38 ("No objectively reasonable evaluator would have concluded, based on the information available to Rhodes, that Goines had a mental illness."); Brief of Appellant at 43 ("No objectively reasonable evaluator would have concluded, based on the information available to Rhodes, that Goines, as a result of mental illness, posed an imminent threat to others."). Goines has thus accepted the contents of the Screening Report and based his claims on the assumed truth of the Screening Report. Under these circumstances, then, it is proper for us to likewise assume the truth of the Screening Report when considering whether Goines has stated a claim

24

against Rhodes and her employer.  See Am. Chiropractic, 367 F.3d at 233-35 (dismissing civil RICO claim by looking to terms of document upon which claim was based); E. Shore Markets, 213 F.3d at 181 (looking to terms of attached lease when dismissing breach-of-lease complaint).

Accordingly, the question on appeal is whether the information contained in the Screening Report is sufficient to provide probable cause for an emergency mental-health detention. We believe it is.[2]

The Screening Report contains Rhodes' personal observations of Goines and notes that Goines' eyes were darting around as if he were responding to visual hallucinations; that Goines was

---

[2]  Relying on Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir. 1991), the district court rested its probable-cause analysis in part on the court's view that the magistrate's issuance of the temporary detention order created a rebuttable presumption of probable cause.  In Torchinsky, a false-arrest case, we used rebuttable-presumption language when considering the effect of the issuance of an arrest warrant based on judicial findings of probable cause on the arresting officer's claim of qualified immunity.  See id. at 261 ("[T]he decision of a detached district judge that Siwinski satisfied the more stringent probable cause standard is plainly relevant to a showing that he met the lower standard of objective reasonableness required for qualified immunity.").  The presumption in Torchinsky thus was not a presumption that probable cause existed, but a presumption of the reasonableness of the officer's reliance on the arrest warrant.  See id. at 262 ("The presumption of reasonableness attached to obtaining a warrant can be rebutted where a reasonably well-trained officer . . . would have known that his application failed to establish probable cause and that he should not have applied for the warrant." (internal quotation marks and alteration omitted)).

25

perseverating on a neighbor "controlling" his television; that Goines displayed inappropriate affect (including laughing at inappropriate times) and delayed response; and that Goines was disoriented as to time, believing it to be March 2012 rather than May 2014. The Screening Report also contains information given to Rhodes by the Officers, including the Officers' reports that Goines heard clicking noises in his apartment that they did not hear and that Goines first threatened to assault his neighbors "with [his] hands" and then later threatened to take care of the problem himself "with his Smith & Wesson firearm." J.A. 23. According to the Screening Report, Goines repeated his threat to Rhodes, telling her that if released, "he [would] return home and assault his neighbors 'because [he was] just tired of it.'"[3] J.A. 23.

As we have explained, "probable cause to seize a person for a psychological evaluation [exists] when the facts and circumstances within [the defendant's] knowledge and of which [the defendant] had reasonably trustworthy information were

_____

[3] Goines alleged in his complaint that he never threatened to harm anyone, an allegation we treated as true as to his claims against the Officers. As we have explained, however, Goines has accepted the truth of the Screening Report for purposes of his claims against Rhodes and her employer, such that the Screening Report controls over the contrary allegation in his complaint. See, e.g., S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013)

26

sufficient to warrant a prudent man to believe that the person poses a danger to himself or others." Cloaninger, 555 F.3d at 334 (internal quotation marks omitted). In our view, the information set out in the Screening Report satisfies this standard.[4] Rhodes observed Goines behaving as if he were responding to visual hallucinations, and she had "reasonably trustworthy information" from the Officers that Goines was suffering from auditory hallucinations as well. Id. (internal quotation marks omitted). In Rhodes' presence, Goines threatened to attack his neighbors when released, and Rhodes was informed by the Officers that Goines had earlier made similar threats. In our view, these facts are "sufficient to warrant a prudent man to believe the person poses a danger to himself or others," id. (internal quotation marks omitted), thus establishing probable cause for the emergency mental-health detention.[5]

---

[4] Goines told Rhodes that he was "born with a 'shrunken cerebellum,'" J.A. 23, and gave her the name of his primary care physician, and he seems to suggest that Rhodes' failure to confer with Goines' physician somehow negates probable cause. We disagree. Cf. Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000) ("Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause.").

[5] In his brief, Goines makes much of the fact that Rhodes included a diagnosis of "Psychotic Disorder NOS [not otherwise specified]" in the Screening Report. J.A. 27. Goines (Continued)

27

As explained above, Goines has accepted the information set out in the Screening Report for purposes of his claim against Rhodes. And because that information established probable

_____

contends that Rhodes, who is not a psychiatrist or psychologist, lacks the qualifications necessary to make such a diagnosis, and he argues that Rhodes misled the magistrate about her qualifications by including the diagnosis in the Screening Report relied upon by the magistrate. In Goines' view, "where the basis for detention rests on the diagnosis of a mental health disorder, there is simply no probable cause for detention where the evaluator making the diagnosis is not properly trained to do so." Brief of Appellant at 37–38.

Even assuming that a deficiency in training could negate the probable cause otherwise established by the facts set forth in the Screening Report, we disagree with Goines' assertion that Rhodes lacked the necessary qualifications. As Goines recognized in his complaint, Rhodes evaluated Goines in her capacity as the "designee and employee of Defendant Valley Community Services Board." J.A. 14. Under Virginia law, designees of local community services boards must be "skilled in the assessment and treatment of mental illness" and must have "completed a certification program approved by the Department [of Behavioral Health and Developmental Services]," Va. Code Ann. § 37.2-809(A); see Va. Code Ann. § 37.2-100. Such designees are specifically authorized to conduct evaluations and determine whether the criteria for temporary detention are met. See Va. Code Ann. § 37.2-809(B). Although Rhodes is not a psychologist, she has the qualifications deemed necessary by Virginia to evaluate Goines and determine the need for temporary detention, an inquiry that requires determining whether a mental illness is present. See Va. Code Ann. § 37.2-809(B) (authorizing involuntary temporary detention "if it appears from all evidence readily available," that, inter alia, "the person . . . has a mental illness and . . . there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, . . . cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information"). Rhodes thus did not mislead the magistrate, and Goines' qualifications-based challenge to Rhodes' actions fails.

28

cause, Goines' complaint fails to allege a constitutional violation by Rhodes. The determination that Rhodes did not violate Goines' constitutional rights also forecloses Goines' claims against Valley Community Services Board, Rhodes' employer. See, e.g., Waybright v. Frederick Cty., 528 F.3d 199, 203 (4th Cir. 2008) ("[M]unicipalities cannot be liable under § 1983 without some predicate constitutional injury at the hands of the individual state officer . . . ." (internal quotation marks and alteration omitted)). We therefore affirm the district court's dismissal of Goines' claims against Rhodes and her employer.

V.

Accordingly, for the foregoing reasons, we hereby affirm the district court's dismissal of Goines' claims against Rhodes, Valley Community Services Board, and Officer D.L. Williams. However, we vacate the district court's dismissal of Goines' claims against Officers Shaw and Dean, and we remand for further proceedings on those claims. In concluding that the complaint against Officers Shaw and Dean survives a motion to dismiss, we need not and do not reach the question of whether the summary judgment record would afford a sound basis for awarding judgment to defendants.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED

29

NIEMEYER, Circuit Judge, concurring:

I am pleased to concur in Chief Judge Traxler's fine opinion, recognizing his nuanced articulation of how the pleader may variously use a document incorporated into the complaint. I write this brief concurrence only to note that, in determining qualified immunity, we need not recognize only the pleader's version of the facts that are stated in the incorporated document if the document is taken to state those facts accurately from the defendants' point of view, here the officers' point of view. Thus, if the document -- in this case, the Incident Report -- were taken to state accurately the officers' perceptions, we could use those perceptions to determine qualified immunity. See Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994). In Rowland, Judge Wilkinson wrote:

> Though it focuses on the objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question. Such a perspective serves two purposes. First, using the officer's perception of the facts at the time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight. Second, using this perspective limits the need for decision-makers to sort through conflicting versions of the "actual" facts, and allows them to focus instead on what the police officer reasonably perceived.

Id. (emphasis added) (citations omitted).

On remand, the officers will be able to supply their own affidavits of their perceptions at the time of the incident,

30

thus enabling the district court to conduct an appropriate analysis of their qualified immunity defense.