**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

DENNIS MUNDT, individually and as
next friend and parent of D.J.M., a minor
child,

      Plaintiff - Appellant,

v.

CAMILLE GADZIALA; JOI JOHNSON,
in their individual capacity,

      Defendants - Appellees.

No. 24-1041
(D.C. No. 1:23-CV-00051-CNS-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Dennis Mundt claimed two Douglas County, Colorado Department of Human

Services ("DHS") caseworkers, Camille Gadziala and Joi Johnson, violated his

Fourth and Fourteenth Amendment rights by knowingly removing his fourteen-year-

old child, D.J.M., from his care based on false and unsupported allegations and then

failing to meet with him afterwards. The district court dismissed the action under

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Federal Rule of Civil Procedure 12(b)(6), ruling that Johnson was entitled to absolute immunity and Gadziala was entitled to qualified immunity.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings. The district court improperly credited as true the contents of exhibits attached to the motion to dismiss, including factual assertions that are inconsistent with the allegations in the complaint. Because the district court's incorrect factual assessment permeated its qualified immunity analysis, we remand for reconsideration of Mundt's claims against Gadziala's assertion of qualified immunity based on Gadziala's conduct as alleged in the complaint. The district court's grant of absolute immunity to Johnson does not suffer from the same error in crediting the exhibits, but the ruling is unsupported by the allegations in the complaint. Consequently, we remand for the district court to reconsider Mundt's claims against Johnson as well and her alternative request for qualified immunity.

I

*A. Factual Allegations in the Complaint*

*1. Allegations Concerning Gadziala*

Because this case comes to us on appeal from a dismissal under Rule 12(b)(6), we must accept as true the well-pleaded factual allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those allegations indicate that Mundt shared equal parenting time of his son, D.J.M., with D.J.M.'s mother, Debra Hennesy, but Hennesy had sole medical decision-making authority.

2

In November 2020, D.J.M.'s middle school reported concerns to DHS about D.J.M.'s ability to participate in strenuous activities and Hennesy's failure to address those concerns. Two months later, Gadziala obtained D.J.M.'s medical records from Rocky Mountain Pediatric Cardiology. The medical records confirmed D.J.M. had been diagnosed with chest pain and tachycardia or dysrhythmia.

On January 5, 2021, Gadziala received an email from Hennesy accusing Mundt of having Munchausen Syndrome By Proxy, a disorder where a caretaker inflicts physical harm on another person to gain sympathy from medical providers, *see Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1238 & n.2 (10th Cir. 2003). Apparently under the parenting plan then in effect, Mundt was restricted to attending one appointment annually with each of D.J.M.'s medical providers. Hennesy reported to Gadziala that Mundt had recently participated in several unauthorized appointments with D.J.M. and may have given D.J.M. amphetamines or marijuana to induce symptoms.

Gadziala immediately contacted a nurse at D.J.M.'s pediatrician's office, who confirmed Mundt was restricted to one appointment per year with D.J.M.'s providers. But according to the nurse, Mundt was still "in his limitations," Aplt. App. at 7, ¶ 18 (bolding and internal quotation marks omitted). According to the complaint, the nurse's statement meant that Mundt had *not* exceeded his authority to attend one appointment per year with each of D.J.M.'s medical providers.

The next day, January 6, Hennesy contacted the police, claiming Mundt was medically abusing D.J.M. An officer went to Mundt's home to conduct a welfare

3

check and "met extensively with both" Mundt and D.J.M. *Id.* at 9, ¶ 28 (internal quotation marks omitted). The officer observed that D.J.M. "seemed to be in good spirits and had all of his schoolwork complete. The residence was clean and organized." *Id.* (internal quotation marks omitted). Concluding there were no safety concerns for D.J.M., the officer left the residence and memorialized his observations in a police incident report ("Police Report").

Despite the officer's conclusion that there were no safety concerns, Gadziala petitioned a state court for an ex parte emergency order to remove D.J.M. from Mundt's care and place him with Hennesy. Mundt alleged Gadziala had no basis for seeking to remove D.J.M. because she knew from the only evidence she had—the nurse's statement that Mundt was still "in his limitations" and the records from Rocky Mountain Pediatric Cardiology confirming D.J.M.'s cardiac condition—that Hennesy's allegations were false. *See id.* at 12, ¶ 33. According to Mundt, the medical records from Rocky Mountain Pediatric Cardiology "utterly contradict the medical neglect or abuse [claims] Ms. Hennesy made about" him and provided no basis for removing D.J.M. *Id.* at 8, ¶ 22.

Nevertheless, the state court granted the petition and ordered D.J.M. removed from Mundt. Mundt alleged that seven specific findings in the state court's removal order were attributable to Gadziala and inconsistent with or unsupported by the evidence she had obtained. But Gadziala and two officers went to Mundt's residence and forcibly removed D.J.M. Citing footage from body cameras worn by the two officers, Mundt alleged that during the removal, D.J.M. repeatedly told Gadziala that

4

he felt safer with Mundt than with Hennesy and that Hennesy had previously made false accusations about Mundt. Gadziala replied to D.J.M. that he was "stalling" and would "have to roll with the punches." *Id.* at 14, ¶¶ 39, 40 (internal quotation marks omitted).

On January 7, DHS petitioned for temporary custody of D.J.M. based on a supporting affidavit filed by Gadziala ("Gadziala Affidavit"). Mundt challenged the veracity of the Gadziala Affidavit as unsupported or contradicted by the evidence. He also alleged the Gadziala Affidavit included information from a Parental Responsibility Evaluation ("PRE") that discredited him but omitted information from the PRE that discredited Hennesy. He quoted excerpts from the PRE indicating Hennesy "exhibits habitual manipulation of others[,]" "a careless disregard for their rights," and "a somewhat undisciplined imagination that takes liberties with objective reality." *Id.* at 16, ¶ 44 (internal quotation marks omitted). He averred the PRE revealed "major if not fatal issues with Ms. Hennesy's credibility, but . . . Gadziala failed to take these [credibility] issues . . . into consideration when completing her investigation." Aplt. App. at 16, ¶ 47. Mundt alleged that based on the Gadziala Affidavit, he was ordered to have no contact with D.J.M., whom he lost the ability to parent.

Following D.J.M.'s removal, Gadziala continued her investigation. She spoke again with the pediatric nurse, as well as with the nurse's supervising pediatrician, both of whom indicated no new referrals were made during a recent appointment. The pediatrician also noted that D.J.M. had gained 21 pounds in four months while in

Mundt's custody, which corroborated Mundt's concern that D.J.M. was malnourished in Hennesy's custody. Another provider indicated that any proposed change to D.J.M.'s medication was made by the provider, not Mundt. And D.J.M. underwent a hair follicle test that was negative for drugs.

Mundt alleged that all of this new information should have been obtained by Gadziala before she petitioned for D.J.M.'s removal. He pointed out that the nurse had no concerns with his involvement in D.J.M.'s care, the providers indicated at least three times that no new referrals were made at Mundt's request, and the records from Rocky Mountain Pediatric Cardiology confirmed D.J.M.'s condition and refuted Hennesy's allegations that he was abusing D.J.M. Yet Gadziala failed to correct her false statements upon which the state court had relied in ordering D.J.M.'s removal. She also failed to notify the state court of D.J.M.'s negative hair follicle test.

### 2. Allegations Concerning Johnson

According to the complaint, Johnson was a "permanency" caseworker who was required by law to meet with Mundt at least once a month but never did. *Id.* at 23, ¶ 88. Mundt averred that Johnson's failure to meet with him prolonged D.J.M.'s separation.

As a result of Gadziala and Johnson's conduct, Mundt had no contact with D.J.M. for three months, and it was ten months before he regained equal, albeit supervised, parenting time. DHS's dependency and neglect case eventually was dismissed, Hennesy left the state of Colorado, and Mundt now has full custody and decision-making authority over D.J.M.

6

### 3. *Allegations Concerning Documents Referenced in the Complaint*

As indicated above, the complaint referenced several documents, including the Police Report, the state court's emergency removal order, and the Gadziala Affidavit. Of those documents, however, Mundt endorsed only the Police Report. He alleged it contradicted many of Hennesy's accusations, including her allegation that he gave D.J.M. amphetamines and marijuana, which was a significant reason for removing D.J.M. He also quoted the police officer's observations that D.J.M. "seemed to be in good spirits and had all of his schoolwork complete. The residence was clean and organized." *Id.* at 9, ¶ 28 (internal quotation marks omitted).

Mundt directly challenged the state court's removal order and the Gadziala Affidavit. He quoted the seven specific findings in the state court's removal order and the four specific statements in the Gadziala Affidavit, all of which he alleged were unsupported or refuted by the evidence. Mundt did not attach these or any other documents to the complaint, nor did he incorporate any document wholesale by reference.

### B. *Procedural History*

Based on the foregoing allegations, Mundt claimed Gadziala violated his Fourth Amendment rights by unlawfully seizing D.J.M., and both Gadziala and Johnson violated his Fourteenth Amendment rights to substantive and procedural due process by interfering in his right of familial association with D.J.M.[1]

---

[1] Mundt disavowed a Fourth Amendment claim against Johnson in his response to the motion to dismiss. *See* Aplt. App. at 72.

7

Defendants moved to dismiss under Rule 12(b)(6), attaching as exhibits the Police Report, the state court's removal order, and the Gadziala Affidavit. They argued the district court could consider these exhibits without converting the motion into one for summary judgment because the documents were referenced in the complaint and central to Mundt's claims. *Id.* at 37 n.1. And relying on information contained in those exhibits, they argued Mundt failed to state a claim for relief.

The district court accepted defendants' arguments and dismissed the action. As explained below, the court relied on defendants' exhibits to hold Gadziala was entitled to qualified immunity. And it held Johnson's alleged status as a permanency caseworker indicated her function was close to the state judicial process, which entitled her to absolute immunity.

II

*A.   Standard of Review.*

"We review a Rule 12(b)(6) dismissal de novo." *Thomas v. Kaven*, 765 F.3d 1183, 1191 (10th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain allegations of fact, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (internal quotation marks omitted).

8

"At the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Thomas*, 765 F.3d at 1190. A defendant's assertion of absolute or qualified immunity at the motion to dismiss stage subjects the defendant to a more demanding standard than that which governs at summary judgment because on a Rule 12(b)(6) motion, the availability of absolute or qualified immunity turns on the facts "*as alleged in the complaint.*" *Id.* at 1194 (internal quotation marks omitted); *see id.* at 1192-93 (evaluating availability of absolute immunity based on the allegations in the complaint); *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1114 & n.1, 1118 (10th Cir. 2019) (same).

B.  *Reliance on Documents Outside the Complaint*

Mundt challenges the district court's consideration of the three exhibits attached to the motion to dismiss—the Police Report, the state court's removal order, and the Gadziala Affidavit. He says the district court could review these exhibits, but the court erred in "weighing what it considered to be conflicting evidence between the Complaint and the exhibits, eventually holding that the exhibits were more probative." Aplt. Opening Br. at 16.

Defendants respond by characterizing Mundt's allegations as conclusory, particularly his allegation that the findings and statements in the state court's removal order and the Gadziala Affidavit were false. Defendants point out the district court is not required to credit conclusory allegations and they were entitled to attach the exhibits to their motion to dismiss. Yet they also describe the content of the exhibits

9

as "inconvenient probative evidence," Aplee. Br. at 14, which they assert prevails over the inconsistent allegations in the complaint. And although they acknowledge the district court "expressed skepticism" with Mundt's allegations, they argue the district court "nevertheless presumed the truth of the allegations," *id.* at 15.[2]

Defendants misapprehend the proper analytical framework for evaluating the exhibits attached to their motion. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotation marks omitted). "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion, but exceptions to this general rule include . . . documents incorporated by reference in the complaint[ and] documents referred to in and central to the complaint, when no party disputes its authenticity[.]" *Clinton*, 63 F.4th at 1275 (brackets and internal quotation marks omitted). "[I]f . . . the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (internal quotation marks omitted). Accordingly, defendants were entitled to

---

[2] We are not so sure the district court was merely skeptical of Mundt's allegations. The complaint challenged eleven findings and statements in the state court's removal order and the Gadziala Affidavit. The district court rejected Mundt's allegations challenging them by overlooking other allegations in the complaint and crediting the exhibits.

attach the exhibits to their motion to dismiss because the documents were referenced in the complaint and their authenticity is undisputed.  Defendants are incorrect, however, to the extent they contend the contents of the exhibits prevail over the allegations in the complaint.

Generally, "if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc., v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017); *see Clinton*, 63 F.4th at 1275 (recognizing the court "need not accept . . . allegations plainly contradicted by properly considered documents or exhibits"); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (same).  Importantly, however, this rule typically applies only to a document that qualifies as a "written instrument," which is "a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (internal quotation marks omitted); *see* Fed. R. Civ. P. 10(c) ("A copy of a *written instrument* that is an exhibit to a pleading is a part of the pleading for all purposes." (emphasis added)); 5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice & Procedure* § 1327 (4th ed. June 2024 Update) ("Wright & Miller") (explaining that "certain documents and other material attached to a pleading that, strictly speaking, [do] not qualify as a 'written instrument' . . . [do] not fall within the meaning of the language in Rule 10(c)"); *cf. Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002) (holding in a copyright action that "[w]hen a district court considers the

11

original work and the allegedly copyrighted work in deciding a Rule 12(b)(6) motion, the legal effect of the works are determined by the works themselves rather than by allegations in the complaint").

Neither the Police Report nor the Gadziala Affidavit constituted a written instrument for purposes of ruling on the motion to dismiss. *See Goines*, 822 F.3d at 168 (concluding district court erred in accepting as true the factual statements in a police incident report, which the court should have treated as "a document prepared by [an officer] . . . representing the [o]fficers' view of events, not a document representing the true facts"); *Smith*, 794 F.3d at 254 (observing that affidavits are not "written instruments" and refusing to credit a party's affidavit that was merely "a personal, narrative summary of his experiences"); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285-86 (5th Cir. 2006) (concluding district court did not abuse its discretion in refusing to credit opinions and conclusions in an affidavit); Wright & Miller, § 1327 n.2 (collecting cases that refuse to credit affidavits and other evidentiary materials as "written instruments"). Similarly, the state court's removal order does not define any legal rights or duties; it instead described D.J.M.'s circumstances based on "the statements of Caseworker Camille Gadziala, and having reviewed all available information." Aplt. App. at 56. The order is authentic but its content is hearsay. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020). Such "documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id.* (internal quotation marks omitted).

12

Additionally, before treating the content of any documents as true, the district court should have considered the nature of those documents and why the complaint referenced them. *See Goines*, 822 F.3d at 167 ("[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."). Indeed, "[a]nimating the exhibit-prevails rule is the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document." *Id.* But the opposite is true here. Mundt did not attach any documents to his complaint. And although he referenced several documents, he endorsed only the Police Report. He directly challenged the accuracy and veracity of the state court's removal order and the Gadziala Affidavit. *See id.* (observing that a plaintiff need not adopt every word within an exhibit as true, otherwise "a libel plaintiff would plead himself out of court simply by attaching the libelous writing to his complaint"). Thus, defendants incorrectly asserted in their motion that the exhibits were "central" to Mundt's claims; they were not. Aplt. App. at 37 n.1. Notably, defendants did not attach other material that might have undermined their arguments, particularly the medical records from Rocky Mountain Pediatric Cardiology, the PRE, or footage from body cameras worn by the officers during the removal, all of which Mundt also referenced in the complaint. This underscores how improper consideration of evidentiary material on a Rule 12(b)(6) motion can "blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted." *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989).

13

Given Mundt's challenge to the state court's removal order and the Gadziala Affidavit, the district court should not have credited the content of those exhibits over the allegations in the complaint.

### C.  The Foundational Error Warrants Remand

#### 1.  Gadziala—Qualified Immunity

With respect to the claims against Gadziala, we would typically review the district court's qualified immunity analysis de novo.  *Roska*, 328 F.3d at 1239.  But our review is hampered because the district court did not delineate the salient facts and inferences solely from the complaint, and defendants have embraced the district court's flawed factual assessment.  Although they defend that assessment by expending a considerable portion of their brief disputing Mundt's allegations, *see* Aplee. Br. at 30-40, such arguments are inappropriate at the pleading stage, *see* *Smith*, 561 F.3d at 1098.  We could undertake the qualified immunity analysis ourselves, but because defendants' briefing is not predicated on the relevant allegations, and the district court did not parse the complaint for well-pleaded facts and inferences, we think the better approach is to remand to the district court for reevaluation of Mundt's claims and Gadziala's assertion of qualified immunity based solely on the allegations in the complaint.

#### 2.  Johnson—Absolute Immunity

As for the claims against Johnson, we review de novo the district court's grant of absolute immunity.  *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1313 (10th Cir. 1999).  "Absolute immunity offers certain government officials total

14

protection from a suit for damages under 42 U.S.C. § 1983." *Thomas*, 765 F.3d at 1191. "In determining whether particular acts of government officials are eligible for absolute immunity, we apply a functional approach which looks to the nature of the function performed, not the identity of the actor who performed it." *Malik*, 191 F.3d at 1314 (ellipsis and internal quotation marks omitted). "In limited circumstances, absolute immunity is . . . available to . . . government officials who perform functions closely associated with the judicial process." *Thomas*, 765 F.3d at 1191 (internal quotation marks omitted). Generally, though, "child welfare workers investigating claims of child abuse are analogous to law enforcement officers who are entitled only to qualified immunity." *Snell v. Tunnell*, 920 F.2d 673, 691 (10th Cir. 1990).

The district court determined Johnson was entitled to absolute immunity because her function as a permanency caseworker was close to the judicial process. The district court reasoned that a state statute cited in the motion to dismiss required the state court to advance the child-separation case toward permanent placement goals. The district court also observed that a state regulation cited in the motion to dismiss required "case contacts . . . to assure child safety and well-being" during the permanent placement process. Aplt. App. at 98. The district court inferred from the statute, the regulation, and Johnson's alleged status as a permanency caseworker that she was acting on behalf of the state court to advance its permanency goals and therefore was entitled to absolute immunity.

These inferences are too attenuated to warrant absolute immunity. The complaint did not allege Johnson was acting at the direction of the state court; it

15

alleged she was a permanency caseworker who failed to meet with Mundt as required by law.[3] Johnson's alleged status as a permanency caseworker does not, by itself, establish that her function was close or integral to the state judicial process absent some allegation that she actually acted at the direction of the court. *See Snell*, 920 F.2d at 689 ("An important prerequisite of absolute immunity in this context is that the defendant social worker act as an actual functionary of the court, not only in status or denomination but in reality." (internal quotation marks omitted)). There are no allegations that she acted in a ministerial function to execute a judicial order. *See Malik*, 191 F.3d at 1313. And the complaint's allegation that she failed to meet with Mundt as required by law suggests she neglected a legislative mandate, not a judicial directive. Because these allegations do not indicate that Johnson functioned close to the state judicial process, there was no basis for extending absolute immunity to her.

Although Johnson alternatively requests qualified immunity on Mundt's Fourteenth Amendment substantive and procedural due process claims, the district court did not consider those issues. Consequently, we remand to the district court to reevaluate Mundt's claims and the availability of qualified immunity for Johnson.

---

[3] Defendants mischaracterize Mundt's argument on this score. They suggest he denies that he alleged Johnson was a "permanency caseworker." Aplee. Br. at 19 (citing Aplt. Opening Br. at 29). But Mundt does not deny he alleged Johnson was a permanency caseworker; he challenges the district court's determination that she "was a *court-appointed*" permanency caseworker. Aplt. Opening Br. at 23 (emphasis added).

III

The district court's judgment is reversed, and this case is remanded for further proceedings consistent with this Order and Judgment.  Defendants' notice of substitution of counsel, which is construed as a motion for substitution of counsel, is granted.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge